**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

REAL PROPERTY KNOWN AS 7501
N.W. 210TH STREET, OKLAHOMA
CITY, OKLAHOMA; ONE 2006
FORD EXPEDITION, VIN
#1FMFU19556LA87027; ONE 2003
LINCOLN TOWNCAR, VIN
#1LNHM82W03Y700559; $6,400.00
IN U.S. CURRENCY; $188,914.60
SEIZED FROM BANK ACCOUNT
#XXX2602 AT QUAIL CREEK
BANK; $42,265.49 SEIZED FROM
BANK ACCOUNT #XXX7618 AT
QUAIL CREEK BANK; $7,766.11
SEIZED FROM BANK ACCOUNT
#XXX2591 AT QUAIL CREEK
BANK; $4,365.35 SEIZED FROM
BANK ACCOUNT #XXX5661 AT
QUAIL CREEK BANK,

    Defendants.
_____

FRANK H. REYNOLDS,

    Claimant-Appellant.

No. 11-6064
(D.C. No. 5:10-CV-00832-C)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

_____

[*]    After examining the briefs and appellate record, this panel has determined

(continued...)

Before **KELLY**, **GORSUCH**, and **MATHESON**, Circuit Judges.

Frank H. Reynolds appeals pro se from the district court's denial of his motion to file a claim out of time in this civil forfeiture proceeding. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm because Mr. Reynolds lacks Article III standing.

## Background

The United States filed this action under 18 U.S.C. §§ 981(a)(1)(A) & 985 seeking forfeiture of certain properties it alleged were involved in money-laundering transactions in violation of 18 U.S.C. § 1956. In the related criminal case, Robert Hodgins, Virtual Money Inc. (VMI), and others were charged in the United States District Court for the District of Connecticut with conspiring to commit money laundering and with specific acts of money laundering. *See United States v. Hodgins*, No. 3:08-cr-00097-MRK (D. Conn. April 10, 2008). The superseding indictment in the criminal case also sought

*(...continued)
unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

forfeiture of over $7 million of property involved in the offenses and traceable thereto.

According to the superseding indictment, Mr. Hodgins is the president of VMI, a Dallas, Texas-based provider of "stored value cards," which are plastic cards that can be loaded with amounts of money and used to withdraw the funds at remote locations.[1] The superseding indictment alleged that Mr. Hodgins' co-conspirators directed their agents to provide the proceeds from sales of controlled substances to agents of VMI, who loaded the proceeds in United States dollars onto VMI stored value cards. The indictment further alleged that agents of the co-conspirators later withdrew the funds in Colombian pesos at ATM machines in Colombia.

In this case the government's Verified Complaint For Forfeiture *In Rem* (Forfeiture Complaint) identified the property that was subject to forfeiture as one tract of real property, two automobiles, currency, and funds seized from several

---

[1]     According to the federal government's 2007 National Money Laundering Strategy:
> Stored value cards (sometimes referred to as prepaid cards) are an emerging cash alternative for both legitimate consumers and money launderers alike. The term 'stored value cards' can cover a variety of uses and technologies. Some cards have embedded data processing chips, some have a magnetic stripe, and some cards (e.g., prepaid phone service cards) just have an access number or password printed on them (the card itself cannot access or transfer cash).

Supp. R. at 150.

bank accounts. The Forfeiture Complaint also identified the record owners of the property and the persons from whom it had been seized. Andrew Western, Inc., was listed as the record owner of the real property. The bank accounts were in the names of Andrew Western, Inc., Global Star Products, Ltd., Cleansip2000, Inc., and Robert E. Hodgins and/or Donna M. Andrew. Mr. Hodgins and Ms. Andrew were alleged to be signatories on each bank account. The automobiles and currency were seized from the residence of Mr. Hodgins and Ms. Andrew. Their residence is the real property defendant in this action. The automobiles were registered to Global Star Products, Ltd., and Virtual Money Inc. The government alleged facts showing that the defendant properties were traceable to the money-laundering offenses. None of the properties or persons listed mentioned Mr. Reynolds.

Forfeiture actions in rem arising from a federal statute are governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Supplemental Rules). Supplemental Rule G(5)(a)(i) provides:

> A person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending. The claim must:
> (A) identify the specific property claimed;
> (B) identify the claimant and state the claimant's interest in the property;
> (C) be signed by the claimant under penalty of perjury; and
> (D) be served on the government attorney . . . .

Supplemental Rule G(5)(a)(ii) sets forth the deadlines for filing claims, which are based on the means of notice applicable to the claimant. Supplemental Rule G(4) prescribes the requirements for notice by publication and direct notice. As to direct notice, "[t]he government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim [based on published notice]." Supplemental Rule G(4)(b)(i).

Mr. Reynolds is a former agent of VMI. He sought leave to file a late claim in this action. In his Verified Motion for Leave to Submit Statement of Interest[2] Out of Time (Verified Motion), he argued that his claim was untimely because the government failed to provide him direct notice of the action under Supplemental Rule G(4)(b)(i). He asserted that he was entitled to direct notice because the government is aware of his interest in the forfeiture proceeding. In support of this contention, Reynolds stated that the government knew he had submitted a complaint to the Department of Justice (DOJ Complaint) on behalf of a group called Select Agents 4 the Restoration of VMI (Select Agents). He described Select Agents as "a group of individuals who had contracted with [VMI] to market the Virtual Money® debit card." Supp. R. at 24 n.1. He also

_____

[2]     "Statement of Interest" is the term used in the Supplemental Rules applicable to admiralty proceedings. *See* Supplemental Rule C(6). Supplemental Rule G(5)(a) uses the term "claim."

pointed to an amicus curiae brief that Select Agents filed in the related criminal case. Finally, he argued that the government was aware of his interest in the forfeiture case based on the government's allegation in the Forfeiture Complaint that various VMI franchise holders had participated in the money-laundering activities.

In the DOJ Complaint, Mr. Reynolds made the following allegations: Select Agents contracted with VMI to market the VMI debit card. VMI and MasterCard Worldwide are direct competitors. MasterCard Worldwide contracted with the Treasury Department to distribute government benefits to recipients via MasterCard debit cards. The DOJ instituted a criminal prosecution against VMI in collusion with the Treasury Department and MasterCard Worldwide solely to bring about the demise of VMI. As a direct result of these actions, Select Agents suffered injury because their businesses were destroyed. Similarly, the Select Agents' amicus curiae brief stated, "VMI is being subjected to criminal prosecution in order to eliminate its debit card from competition with the Treasury's Direct Express debit card, and . . . the DOJ is complicit in this exercise." Supp. R. at 39.

The district court denied Mr. Reynolds' Verified Motion, holding that strict compliance with Supplemental Rule G(5) is required and that Mr. Reynolds failed to show his late filing was the result of excusable neglect. The court found that Mr. Reynolds had no right to direct notice under Supplemental Rule G(4)(b)(i)

-6-

because he "does not claim that he is the rightful owner of any of the seized assets." Supp. R. at 270. It concluded that the government satisfied due process vis-a-vis Mr. Reynolds by publishing notice on an official government website pursuant to Supplemental Rule G(4)(a)(iv)(C). The court also cited additional factors that weighed against a finding of excusable neglect: Mr. Reynolds was aware of the seizure of the assets before the deadline to file a claim; the United States would be prejudiced, albeit minimally, by the late filing; and Mr. Reynolds' pro se status did not excuse his non-compliance with the procedural rules. Mr. Reynolds filed a motion to reconsider, which the district court also denied.

**Discussion**

Mr. Reynolds reiterates on appeal his argument that the government's failure to provide him direct notice of the action resulted in his untimely claim. He contends that he was entitled to direct notice under Supplemental Rule G(4)(b)(i) based on the government's awareness of his interest in the forfeiture matter. And he claims that his due process rights were violated by the government's failure to provide him direct notice and the district court's denial of leave to file his claim out of time.

The United States argues that the district court's ruling should be affirmed because Mr. Reynolds failed to show that he has Article III standing to file a

-7-

claim in this forfeiture action. We agree and affirm the district court's denial of leave to file a late claim.

We may raise the issue of Article III standing at any time. *See Wilson v. Glenwood Intermountain Props., Inc.*, 98 F.3d 590, 592-93 (10th Cir. 1996). "Whether a claimant has constitutional standing is a threshold jurisdictional question." *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008). "To satisfy the Article III standing requirement, a party must establish three elements: (1) injury in fact, (2) a causal relationship between the injury and the challenged conduct, and (3) likelihood that the injury will be redressed by a favorable decision." *Wilson*, 98 F.3d at 593. We have addressed the question of Article III standing in a civil forfeiture action:

> As the party seeking to intervene in an in rem forfeiture action, a claimant bears the burden of establishing his own constitutional standing at all stages in the litigation. At the pleading stage, a claimant satisfies this burden by alleging a sufficient interest in the seized property, such as an ownership interest, some type of lawful possessory interest, or a security interest.

*$148,840.00 in U.S. Currency*, 521 F.3d at 1273 (citations omitted).

Mr. Reynolds did not attach a separate proposed claim to his Verified Motion. He instead indicated his intent to incorporate the substance of his claim into his Verified Motion. *See* Supp. R. at 25 (stating "Reynolds is submitting his Statement of Interest *herein* in the most timely manner possible under the circumstances . . . ." (emphasis added)). We note that Mr. Reynolds signed his

-8-

Verified Motion under penalty of perjury, as required for submission of a claim under Supplemental Rule G(5)(a)(i)(C). We look to the allegations in his Verified Motion to determine if he established Article III standing. We liberally construe his pro se filing. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

The defendant property in this civil forfeiture action includes real property, automobiles, currency, and the funds in several bank accounts. Although Mr. Reynolds asserted in his Verified Motion that he has an interest in this action, we agree with the district court that he failed to allege an ownership interest in any of the seized properties. *See $148,840.00 in U.S. Currency*, 521 F.3d at 1273. In fact, he listed the properties in the DOJ Complaint, and as to each specific property he identified the owner or owners as a person or entity other than himself. He also did not allege a possessory or security interest in any of the defendant properties. *See id.* Nor does he even mention any of the seized properties in his appeal brief.

Mr. Reynolds did assert, by reference to the DOJ Complaint and the Select Agents' amicus brief, that as a former agent of VMI, he suffered an injury due to the loss of his business. But his own allegations trace that injury to the United States' criminal indictment of VMI rather than to an unlawful forfeiture of the defendant properties in this action. *See United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 528-29 (2d Cir. 1999). In *Cambio Exacto*, the Second Circuit

stated that "[s]ubstantial economic harm is plainly the type of injury for which parties may seek redress in federal court." *Id.* at 528. Moreover, where that injury is the direct result of the government's allegedly unlawful forfeiture and could be redressed by a successful challenge to the forfeiture, Article III standing is satisfied. *See id.* Applying those principles, the court affirmed the district court's denial of a claimant's motion for leave to file a late notice of claim in a civil forfeiture action because the claimant failed to establish Article III standing. *See id.* at 529. The court concluded that the claimant did not have constitutional standing because its alleged injury was not the direct result of the forfeiture and would not be redressed by a successful challenge to the forfeiture, which would result in a return of the seized property to a party other than the claimant. *See id.* Here, as in *Cambio Exacto*, Mr. Reynolds has not alleged any facts showing that his alleged economic injury is the direct result of the forfeiture of the defendant properties, or that a successful challenge to the forfeiture and a return of the properties to their owners would redress his alleged injury.

Because Mr. Reynolds failed to meet his burden to establish constitutional standing to bring a claim in this civil forfeiture action, we AFFIRM the district court's order denying him leave to file his claim out of time.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge